IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CINDY DUMAS and PAUL DUMAS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) | Case No. 03-0640-CV-W-GAF |
| ALBERS MEDICAL, INC., a/k/a ALBERS MEDICAL DISTRIBUTORS, INC., and MED-PRO, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Presently before the Court is Plaintiff Paul Dumas' ("Dumas") Motion to Certify a Class (Doc. #55).[1] The issue presented is whether, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, this Court should certify a class consisting of "All persons and entities in the United States who purchased or paid any portion of the cost for counterfeit Lipitor distributed or sold by Albers Medical, Inc., for purposes other than for resale, during the period January 1, 2002, to the present." Having reviewed the evidence submitted by the parties, Dumas' Motion to Certify a Class is DENIED.

## DISCUSSION

**I.     Facts**

---

[1]Cindy Dumas, Dumas' wife, has withdrawn as a proposed class representative.

1

Lipitor is exclusively manufactured by Pfizer Ireland Pharmaceuticals.[2] Lipitor is used in the treatment of cardiovascular disorders and cholesterol reduction and contains the active ingredient atorvastatin calcium. Lipitor has been prescribed to over eighteen million Americans and is taken by eleven million Americans daily. Defendant Albers Medical, Inc. ("Albers") is a distributor of pharmaceutical products that is engaged in the business of repackaging, distributing, and selling pharmaceutical products, including Lipitor.

On May 23, 2003, the FDA announced that substantial quantities of apparently counterfeit Lipitor were being distributed by pharmacies. The FDA concluded that the counterfeit Lipitor had been repackaged by Med-Pro[3], purchased by Albers, sold by Albers to wholesalers, and thereafter sold to retailers. Albers voluntarily recalled three lots of ninety-tablet bottles of a product labeled with the Lipitor brand (approximately 100,000 bottles) stating, "The FDA has advised us that these products are, or could be counterfeit." On June 3, 2003, the FDA announced that its investigation had revealed approximately 30,000 more bottles of apparently counterfeit Lipitor, also repackaged by Med-Pro. As of July 16, 2003, approximately 300,000 bottles had been recalled by distributors.[4] The FDA noted that, although the counterfeit bottles in question originally contained ninety tablets, many patients may have received their

---

[2]Facts are primarily derived from Dumas' first amended complaint (Doc. # 15) except where otherwise noted.

[3]Med-Pro is also named as a Defendant in Dumas' first amended complaint, but filed Chapter 11 Bankruptcy on August 22, 2003.

[4] Because drug wholesalers and retailers generally do not keep track of the lot numbers they sell to their customers, Albers' wholesale customers, and their retail customers in turn, recalled all of the Lipitor they sold during the time the Med-Pro Lipitor was in their inventories. (Def.'s Sugg. in Opp'n to Pl.'s Mtn to Certify Class, Doc. #83)

2

tablets in smaller quantities from a pharmacy.

Dumas was prescribed Lipitor by his physician. On or about April 1, 2003, Dumas purchased a ninety count bottle of ten mg tablets from the Hannaford Bros. pharmacy in Rumsford, Maine. Sometime in June 2003, Dumas learned of the recall on television and inquired with his pharmacist. He was instructed to discontinue taking the drug and to return the tablets to Hannaford's pharmacy for replacement pills. Dumas did so. Dumas does not know whether the pills he consumed or the pills he returned to the pharmacy were counterfeit or genuine, or whether they were distributed or sold by Albers. (Pl.'s Dep. 62:22-63:7, 66:13-67:10, 13:20-14:2, 99:1-8). Albers' counterfeit products were at times sold in packages that also contained genuine Lipitor products; the counterfeit products were in some instances indistinguishable to the naked eye from genuine Lipitor products. In addition, the pharmacies that distributed Lipitor did not purchase their entire supply of Lipitor from Albers. The pharmacies used various other suppliers, including McKesson, H.D. Smith, and Cardinal. (Doc. #83).

Dumas filed suit against Albers on July 29, 2003. He asserts the following claims against Albers: 1. violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"); 2. violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 et seq ("MMPA"); 3. negligence; 4. unjust enrichment; 5. violation of the consumer protection laws of 42 other states. Dumas seeks class certification with respect to the RICO, MMPA, and negligence claims.

Dumas argues that he has met all the requirements necessary for class certification under Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") and Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)"). (Pl.'s Sugg. in Supp. of Mtn to Certify Class, Doc. #56). Albers argues that the proposed class should not be certified because Dumas has failed to satisfy Rule 23(a)'s requirement of commonality of

3

questions of law and fact. (Doc. #83). Additionally, Albers argues that Dumas has failed to satisfy Rule 23(b)(3) because individual issues predominate over issues common to the class and a class action is not a superior method of adjudication. Id. Albers further argues that Dumas' claims are not typical of the claims of the class. Id. Finally, Albers contends that the proposed class is not ascertainable. Id.

**II.     Legal Standard**

A claimant may sue on behalf of a class only if he meets the four threshold requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). The claimant has the burden of proving that his case is appropriate for class certification under Rule 23. *See* Blades v. Monsanto, 400 F.3d 562, 569 (8th Cir. 2005).

The requirements of 23(a) are as follows:

1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

With regard to the Rule 23(b) requirement, Dumas posits Rule 23(b)(3), which requires that questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy. In evaluating Rule 23(b)(3)'s requirement that common issues predominate over individual issues, the court conducts a preliminary inquiry into the facts and determines whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. Blades, 400 F.3d at 566.

**III.     Analysis**

A lengthy discussion of Rule 23(a)'s four explicit requirements is unnecessary because this Court finds that Dumas has not met Rule 23(b)(3)'s more stringent requirement that common issues predominate over individual issues. Further, this Court finds that Dumas' proposed class is unmanageable, and, thus, not a superior method of adjudication under Rule 23(b)(3).

A. Predominance Requirement of 23(b)(3)

While commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3) are intertwined, the Rule 23(a)(2) prerequisite merely requires that common questions of law or fact *exist* among the members of the class; Rule 23(b)(3) requires that common questions *predominate* over individual questions. *See* Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 94 (W.D. Mo. 1997). Thus, simply showing that common questions of law or fact exist under Rule 23(a)(2) is insufficient to satisfy Rule 23(b)(3)'s predominance requirement. *See* Id.

Dumas argues that the common questions in this case include: 1. whether Albers negligently or otherwise improperly repackaged, distributed, and/or sold counterfeit Lipitor; 2. whether Albers is liable to Dumas and the class for damages for conduct under RICO; and 3. whether Albers is liable to Dumas and the class under the MMPA. (Doc. #56). Dumas argues that, although many of the class members' claims require corroboration and individualized determinations of injury and damages, common issues still predominate over individual issues as required by Rule 23(b)(3). Id.

In determining whether the plaintiff has met Rule 23(b)(3)'s more stringent requirement that common issues predominate over individual issues, the court inquires into the nature of the evidence required to prove the case. Blades, 400 F.3d at 566. If, to make a prima facie showing on a given question, the members of a proposed class must present evidence that varies from member to member, then it is an

5

individual question for purposes of Rule 23(b)(3); if the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Id. Accordingly, the Eighth Circuit has found that, just because the legal issues or underlying theories of recovery involved may be common to all class members does not mean that the proof required to establish these same issues is sufficiently similar to warrant class certification. *See* Id. Therefore, "In order to effectively make the Rule 23(b)(3) inquiry, it is necessary for the court to consider what will have to be proved at trial and whether those matters can be presented by common proof or whether individual proof will be required."[5] 7AA Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1785 (3d ed. 2005).

In Arons v. Rite-Aid, 2005 WL 975462, at *18 (N.J. Super. Ct. Law Div. 2005), the New Jersey Superior Court refused to certify a class because of the individual nature of the proof that would have been required in order to prove the case.[6] Arons involved several defendants, including Albers, and the same sale and distribution of allegedly counterfeit Lipitor that is at issue in this case. Id. at *1. Regarding the individual nature of the evidence required to prove the case, this Court is persuaded by the Arons court's reasoning. The Arons court pointed out that even if the plaintiffs were sold counterfeit Lipitor, absent potential class members could not be confidently said to have been treated in the same way. Id. at *18. Because the

---

[5]However, in conducting a Rule 23(b)(3) analysis, the court may not inquire into whether there is a substantial possibility that the class would prevail on the merits. Mersay v. First Republic Corp. of America, 43 F.R.D. 465 (D.C.N.Y. 1968). Thus, the Court will not evaluate whether Dumas most likely will or will not be able to prove his case; rather, the Court evaluates the nature of the evidence Dumas must present in order to prove his case.

[6] The Arons court incorrectly applied Rule 23(a)(2) by incorporating some of the requirements of Rule 23(b)(3) in its Rule 23(a)(2) analysis. However, despite the fact that the Arons court did not properly distinguish between the two subsections in conducting its analysis, this Court agrees with the result the Arons court reached.

6

contents of individual bottles sold at retail remain unknown, the Arons court found it impossible to know with any certainty whether each purchaser took home authentic Lipitor, counterfeit Lipitor, or some combination of the two. Id. The court further noted that many purchasers consumed their tablets, while others returned them to the pharmacy or retained the tablets. Id. The Arons court stated:

> The question of what each purchaser actually acquired demands individualized investigations and assessments for potential absent class members' claims, thereby militating against a finding of commonality. There is simply no general defect against which to measure the defendant's conduct. Each sale was unique and the contents of the bottle sold to an absent class member will be unknown unless each class member can prove its contents. This is the antithesis of commonality.

Id.

The Arons court pointed out that the plaintiffs unwittingly recognized that predominance was absent when they offered a class definition that required findings of counterfeit Lipitor as the price of admission to the class. Id. at *20. In finding that plaintiffs failed to meet the predominance requirement, the Arons court stated:

> The evidence does not demonstrate a systemic flaw in the goods that were sold and distributed by defendants. Rather, the most that may be said is that some of the goods sold have the earmarks of something other than authentic Lipitor. This cannot serve as the basis upon which a class action–one that will bind defendants as well as all absent class members–may proceed.

Id.

In the instant case, as in Arons, potential class members would be required to show, on an individual basis, that they bought or paid part of the purchase price for Lipitor, that the tablets they bought were counterfeit, and that the counterfeit Lipitor was distributed or sold by Albers during the class period. Eleven million Americans take Lipitor daily, and much, if not most, of the Lipitor on the market during the class period was genuine. Dumas himself stated in his deposition that he does not know if the tablets he

7

purchased were counterfeit or genuine, or whether they were distributed or sold by Albers. Even assuming Dumas could show that the tablets he personally purchased were counterfeit and that they were distributed or sold by Albers, that fact does not entitle the other class members to automatically recover; rather, putative class members would be required to present individualized evidence to prove that they, too, received counterfeit Lipitor that was distributed or sold by Albers.

Dumas argues that the nature of the proof required in this case amounts only to a difference in damages, and that differences in damages do not necessarily prohibit class certification. (Doc. #56). Clearly, this case presents more than just an issue of the amount of damages suffered by specific members of the class. This Court does not find that predominance is defeated in this case simply because one plaintiff may have suffered $10 in damages and another may have suffered $100. Rather, predominance is defeated because, before reaching the issue of the amount of damages each plaintiff suffered, it must be determined on an individualized basis whether those who claim class membership in fact fall within the definition of the class. Because of the intensely individualized inquiries that would be required in order to determine what each purchaser actually acquired, this Court finds that Dumas has failed to meet Rule 23(b)(3)'s requirement that common issues predominate over individual issues.

      B.            <u>Identifying and Managing the Proposed Class</u>

In addition to the four explicit requirements in Rule 23(a), Rule 23(a) also includes two additional requirements by implication, namely that a class must exist, and that the representative parties must be members of such class. <u>McElhaney v. Eli Lilly & Co.</u>, 93 F.R.D. 875, 877 (D. S.D. 1982). "[I]dentifying the class insures that those actually harmed by the defendant's conduct will be the recipients of the relief eventually provided." <u>In re PPA Products Liability Litigation</u>, 214 F.R.D. 614, 617 (W.D. Wash. 2003).

8

Various courts have declined to certify a class based upon the finding that the proposed class is not "ascertainable," not "readily identifiable," or not "administratively manageable."[7] In re Paxil Litigation, 212 F.R.D. 539, 545 (C.D. Cal 2003) (plaintiff defined the proposed class in such a manner as to make the actual composition of the class only determinable at the conclusion of the proceedings); McElhaney v. Eli Lilly & Co., 93 F.R.D. 875, 877-88 (D. S.D. 1982) (denying certification of class of people exposed to DES in the womb because of difficulty for individual class members to show they were exposed to and suffered damages from exposure to DES.)

Dumas argues the threshold requirement that the class be ascertainable is met by simply defining the class using objective criteria. In re MTBE Products Liability, 209 F.R.D. 323 (S.D.N.Y. 2002). Dumas' proposed class is indeed defined objectively–either an individual purchased or paid part of the purchase price for counterfeit Lipitor or he did not. Either the counterfeit Lipitor that an individual purchased was sold or distributed by Albers or it was not. However, the requirement that there be an identifiable class demands more than just an objective definition, and more than just meeting the threshold requirement of theoretical ascertainability; the requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite *so that it is administratively feasible for the court to determine whether a particular individual is a member*. 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1760 (3d ed. 2005) (emphasis added).

---

[7]Rule 23(a) implicitly requires, as a threshold matter, that the proposed class be defined in such a way as to make the class members ascertainable or identifiable. Rule 23(b)(3)(D) sets forth, as part of the inquiry into whether a class action is a superior method of adjudication, the related consideration of administrative manageability of a proposed class. The requirements of ascertainability and administrative manageability, though distinct, touch upon similar concerns. Therefore, they will be discussed together.

9

The class Dumas seeks to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling. *See* Hnot v. Willis Group Holdings, Ltd., 228 F.R.D. 476, 481 (S.D.N.Y. 2005). The Court must be able to determine class membership without having to answer numerous fact-intensive inquiries. Daniels v. City of New York, 198 F.R.D. 409, 414 (S.D.N.Y. 2001). Thus, the class must not only be theoretically identifiable, but Dumas must also demonstrate that the aggrieved class can be readily *identified* without resort to intensive, individualized factual inquiries. *See* Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981) (denying class certification because it would have been a "Sisyphean task" to identify class members with viable claims).

In the instant case, Dumas stated in his deposition that he did not know for certain whether the pills he received were genuine or counterfeit, nor whether the pills he received were sold or distributed by Albers. Thus, Dumas himself is quite possibly not a member of the class he seeks to certify.[8] In addition, under Dumas' proposed class definition, individuals are required to show some proof of injury in order to qualify as a member of the class. Specifically, an individual must demonstrate that he or she purchased or paid part of the cost for counterfeit Lipitor that was distributed or sold by Albers. This could require testing the pills. At the very least, it would require individual class members to rely on their memories as to where and when the pills were purchased, and perhaps what the bottle looked like, what lot number was imprinted on it, or whether the bottle was labeled as having been repackaged by Med-Pro. It is doubtful that potential

---

[8]The proposed class representatives must have standing to pursue the claims as to which class wide relief is sought. Wooden v. Board of Rgts. of the Univ. Sys. of Georgia, 247 F.3d 1262, 1287 (11th Cir. 2001). This Court denies certification in this case based on Dumas' inability to demonstrate that common issues predominate over individual issues and that a class action is a superior method of adjudication, as required by Rule 23(b)(3). The Court therefore declines to reach the standing issue directly.

10

class members would possess any type of physical proof of purchase. Many potential class members returned their pills to the pharmacy for a refund or replacement pills; many consumed the pills.

In addition, the pharmacies that distributed Lipitor did not purchase their entire supply of Lipitor from the defendant. The pharmacies used various other suppliers, including McKesson, H.D. Smith, and Cardinal. In order to recover, class members would be required to demonstrate that Albers, and not another supplier, provided the pills that they received. Based on the difficulty (perhaps the impossibility) of proving that the pills they received were counterfeit and that they were distributed or sold by Albers, it is likely that a substantial number of proposed class members would not know, and indeed would have no way of determining, whether they were members of the class.

Dumas relies on Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125, 136 (S.D.N.Y. 2003) for the proposition that the class is "ascertainable" even if identifying class members would be administratively burdensome. However, as proof of the existence of an aggrieved class, the plaintiff in Dunnigan presented a computer-generated list of individuals; in addition to being theoretically ascertainable, the putative class members could easily be identified from this list and, if not, could be identified through an examination of individual files. Id. Thus, the Dunnigan court suggested that, although the manner of tracking down class members may be tedious and burdensome, that fact alone would not be sufficient to deny class certification. *See* Id.

In this case, Dumas seeks to certify a nationwide class of individuals who purchased or paid part of the cost for counterfeit Lipitor that was sold or distributed by Albers. Identifying the members of Dumas' proposed class does not involve merely the burdensome task of looking through files or databases in order to determine who received counterfeit Lipitor that was distributed or sold by Albers; no such records exist.

11

Rather, there simply is no way to accurately or readily identify the potential members of Dumas' proposed class.

The Plaintiff also cites to In re MTBE Prods. Liab., 209 F.R.D. 323, 337 n.20 (S.D.N.Y. 2002), which notes that the question of whether it would be administratively burdensome for the court to determine whether a particular individual is a class member is "primarily one of manageability, and not ascertainability." The requirements of ascertainability and manageability are intertwined. Ascertainability is a threshold question implicit in Rule 23(a); manageability is a consideration attendant to the Rule 23(b)(3) requirement that common issues predominate over individual issues and that a class action be a superior method of adjudication. Whether addressed under the heading of "ascertainability" or "manageability," the fact remains that in order for a class to be certified, the proposed class must be both ascertainable in theory and readily identifiable (thus, administratively manageable) in fact. While the potential class members may be ascertainable in an abstract sense, this case is unmanageable as a class action under Rule 23(b)(3)(D) for the same reasons that it does not meet the predominance requirement of Rule 23(b)(3)–identifying the putative class members is simply not possible without an individualized inquiry into the facts and circumstances surrounding each purchase of Lipitor during the class period.

Alternatively, Dumas argues, if the Court finds it impossible to identify some or all (or, apparently, even a single one) of the potential class members who paid for counterfeit Lipitor that was distributed by Albers, the Court should grant *cy pres* relief.[9] The purpose of the *cy pres* doctrine in the class action

---

[9]The term *cy pres* means "as near as possible," and originated as a rule of construction to save a testamentary gift that would otherwise fail, allowing the next best use of the testator's funds to satisfy the testator's intent as near as possible. 3 Newberg on Class Actions § 10:16 n.1 (4th ed. 2002).

12

context is to prevent the defendant from being relieved from liability because of the infeasibility of distributing the proceeds of the settlement or judgment to the *class members*. Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 784 (7th Cir. 2004) (emphasis added). In the class action context, the *cy pres* doctrine thus presupposes the existence of a class.[10] *Cy pres* relief, or "fluid recovery," while it may be appropriate in certain circumstances because of the infeasibility of distributing the proceeds of a settlement or judgment, is not appropriate when it is used to assess the damages of the class without proof of damages suffered by individual class members. See Eisen v. Carlisle & Jacqueline, 479 F.2d 1005 (2nd Cir. 1973), *cert. granted*, 414 U.S. 908 (1973) *and vacated*, 417 U.S. 156 (1974) (Eisen III) (disapproving the use of a plan characterized as "fluid recovery" to assess the damages of the class without proof of damages suffered by individual class members). It is inappropriate to use fluid recovery as a means of rendering manageable–by rendering unnecessary any proof of damages to individual class members–an otherwise unmanageable class action. See In Re Agent Orange Prod. Liab. Litig., 818 F.2d 179 (2nd Cir. 1987). In this case, Dumas asks the Court to assess the damages of the class, not only without requiring proof of the amount of individual damages, but without even requiring any of the potential class members to demonstrate that they were harmed whatsoever by Albers' conduct. *Cy pres* relief is therefore not appropriate in this case.

## CONCLUSION

---

[10]Dumas cites to In re Airline Ticket Comm'n Antitrust Litigation, 307 F.3d 679 (8th Cir. 2002), apparently for no other purpose than to point out that the 8th Circuit has approved distribution of *cy pres* funds in past class action settlements. However, the issue in In re Airline had nothing to do with whether class certification was proper; the issue involved which agencies were the proper recipients of *cy pres* funds following settlement.

13

Because of the intensely individualized inquiries that would be required in order to determine what each potential class member actually acquired, this Court finds that Dumas has failed to meet Rule 23(b)(3)'s requirement that common issues predominate over individual issues. Additionally, this case is unmanageable as a class action under Rule 23(b)(3) because identifying the potential class members is simply not possible without an individualized inquiry into the facts and circumstances surrounding each purchase of Lipitor during the Class period.

Accordingly, it is hereby ORDERED that Dumas' Motion to Certify a Class is DENIED.

IT IS SO ORDERED

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:   September 7, 2005